# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 2, 2012

No. 12-60116
Summary Calendar

Lyle W. Cayce
Clerk

GONZALES ELECTRICAL SYSTEMS; AMERICAN INTERSTATE INSURANCE COMPANY,

Petitioners

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR; VALERIE MIDDLETON,

Respondents

On Petition for Review of a Judgment
of the Benefits Review Board
BRB No. 11-0319

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Gonzales Electrical Systems (Gonzales) petitions this court for review of a decision of the Benefits Review Board (BRB) affirming an administrative law judge's award of benefits to Valerie Middleton under the Longshore and Harbor

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950 (2010), following the death of her husband. We have jurisdiction over the petition under 33 U.S.C. § 921(c).

This appeal presents two issues: first, whether the BRB and the ALJ properly applied the LHWCA's presumption of coverage, and second, whether the BRB and the administrative law judge (ALJ) properly classified Gonzales' per diem payments as "wages" for the purpose of calculating benefits. Because we find no error, we DENY the petition for review.

## FACTS AND PROCEEDINGS

Harold Middleton was an electrician employed with Gonzales. He and his wife Valerie Middleton lived in Warren, Texas, but at the time of his death he was working at a drilling rig at a shipyard in Vicksburg, Mississippi, a job estimated to last for nine to ten months. The job involved working twelve-hour days, at first for five days a week, then for seven days a week. Middleton stayed at a motel and received a $50 per diem payment for each day worked in Vicksburg.

On January 3, 2007, Middleton was climbing to the fourth floor of the rig when he complained to a co-worker that he was suffering from chest pain. He had made similar complaints the previous day. In order to reach the fourth floor, Middleton had to climb stairways and a ladder while carrying up to 15 pounds of equipment. While on the fourth floor roof, Middleton suffered a fatal heart attack.

Valerie Middleton filed a claim for death benefits under the LHWCA against Gonzales and its insurance carrier, American Interstate Insurance Company. The matter was referred to an administrative law judge. Both parties filed cross-motions for summary decision on two issues: (1) whether to apply the statutory presumption that LHWCA coverage applies pursuant to 33

2

U.S.C. § 920(a), and (2) the correct amount of per diem payments to be included in the calculation of Middleton's average weekly wage. Finding that genuine issues of material fact existed as to both issues, the ALJ denied the motions. The parties waived their right to an in-person hearing.

On December 21, 2010, the ALJ issued a decision based on a review of the briefs and written record. The ALJ found that Middleton had made the required *prima facie* showing for the presumption of LHWCA coverage to apply. The ALJ reaffirmed that the per diem payments were properly included in the calculation of Middleton's average weekly wage.[1] Based on pay records and testimony from Gonzales' owner, the ALJ found that the per diem payments included in Middleton's average weekly wage should reflect a seven-day work week. The ALJ therefore calculated Middleton's average weekly wage as $1,726.28.

Gonzales appealed the ALJ's decision to the U.S. Department of Labor Benefits Review Board. The BRB concluded that there was "substantial evidence of record" to support the ALJ's finding that Middleton had established the *prima facie* case necessary to apply the presumption of coverage, and that the ALJ "acted within his discretion" in crediting testimony from Middleton's co-workers and medical expert. Relying on our decision in *B&D Contracting v. Pearley*, 548 F.3d 338 (5th Cir. 2008), the BRB affirmed the ALJ's conclusion that the per diem payment was properly construed as "wages." The BRB therefore affirmed the ALJ's decision. On appeal to this court, Gonzales claims that the decisions of the BRB and the ALJ contain errors of law related both to

---

[1] Originally, the parties had agreed that the only issue for adjudication was whether Gonzales' per diem payments to Harold Middleton should properly be considered part of Middleton's wages. The ALJ found that they were properly included and issued a decision and order calculating average weekly wage accordingly. However, following the correction of a mathematical error in the ALJ's wage calculation, Gonzales indicated that it would appeal the decision as to the inclusion of per diem and that it would also litigate the issue of causation of death. Thus, the ALJ vacated its previous decision and order.

the LHWCA presumption of coverage and also to the treatment of per diem payment as wages.

## STANDARD OF REVIEW

Our review of a BRB decision is "limited to considering errors of law and ensuring that the [BRB] adhered to its statutory standard of review, that is, whether the ALJ's findings of fact are supported by substantial evidence and are consistent with the law." *B & D Contracting v. Pearley*, 548 F.3d 338, 340 (5th Cir. 2008) (quoting *H.B. Zachry Co. v. Quinones*, 206 F.3d 474, 477 (5th Cir. 2000) (internal quotation marks omitted). We review the BRB's legal conclusions de novo, *id.* (citing *Tarver v. Bo-Mac Contractors, Inc.*, 384 F.3d 180, 181 (5th Cir. 2004)), according deference to interpretations of the LHWCA by the Director of the Office of Workers' Compensation Programs. *Id.* (citing *Pool Co. v. Cooper*, 274 F.3d 173, 177 (5th Cir. 2001)).

## DISCUSSION

Gonzales argues on appeal that the decisions of the BRB and the ALJ contain two errors. First, Gonzales maintains that the BRB and the ALJ incorrectly applied the presumption of coverage afforded claimants under 33 U.S.C. § 920(a). Second, Gonzales contends that the BRB and the ALJ erred as a matter of law by considering per diem payments as "wages" under 33 U.S.C. § 902(13).

## A

Gonzales argues that the decisions of the BRB and the ALJ misapplied the LHWCA presumption of coverage under 33 U.S.C. § 920(a). Gonzales' argument is unavailing.

The LHWCA provides for compensation for "disability or death of an employee . . . if the disability or death results from an injury occurring upon the navigable waters of the United States," including adjoining areas. 33 U.S.C. §

903(a). The LHWCA defines an "injury" as an "accidental injury or death arising out of and in the course of employment . . . ." 33 U.S.C. § 902(2). "The words 'arising out of' instruct that the employment must have caused the injury." *Bludworth Shipyard, Inc. v. Lira*, 700 F.2d 1046, 1049 (5th Cir. 1983).

Section 920(a) of the LHWCA establishes a presumption of coverage in favor of claimants who establish a *prima facie* showing of work-related injury. 33 U.S.C. § 920(a); *Port Cooper/T. Smith Stevedoring Co. Inc. v. Hunter*, 227 F.3d 285, 287 (2000). To make such a showing, a claimant must prove that "(1) he suffered a harm and (2) a condition of the workplace could have caused, aggravated, or accelerated the harm." *Amerada Hess Corp. v. Director, Office of Worker's Compensation Programs*, 543 F.3d 755, 761 (5th Cir. 2008). Once the presumption is invoked, the employer can rebut it only through showing "substantial evidence establishing the absence of a connection between the injury and the employment." *Gooden v. Director, Office of Worker's Compensation Programs, U.S. Dep't of Labor*, 135 F.3d 1066, 1068 (5th Cir. 1998).

There is no dispute that Middleton suffered a heart attack while at work and that the first element of the *prima facie* case is therefore satisfied. The ALJ found that the second prong was also satisfied, based upon testimony from co-workers regarding work conditions and testimony from a medical expert that such conditions were risk factors for, and "more probabl[y] than not" caused, Middleton's heart attack.

Gonzales argues that the ALJ erred in relying on the testimony of Middleton's medical expert, Dr. Christopher Mallavarapu. Specifically, Gonzales argues that Dr. Mallavarapu's opinion was "pure speculation" because there was no evidence in the record "that Middleton was under any emotional stress[ or] was under any physical stress."

But the *prima facie* showing does not require proof that a claimant's

employment actually caused, aggravated, or accelerated his injury; merely that it *could have* done so.  33 U.S.C. § 920(a); *see also Wheatley v. Adler*, 407 F.2d 307, 313 (D.C. Cir. 1968) (stating that evidence showing that there is "realistic possibility" that an injury was work related "sufficed" to invoke the presumption.).  Dr. Mallavarapu, after reviewing the record evidence, testified that Middleton experienced both physical stress, including climbing stairways and ladders while carrying equipment, and emotional stress, including working twelve-hour days seven days a week while living away from his family.  Dr. Mallavarapu testified further that stress has been found to be the third leading risk factor for heart attack and that in this instance, it was "more probable than not" that work-related stress contributed to Middleton's heart attack.  The ALJ did not err in finding this evidence sufficient to establish that Middleton's work conditions could have caused or aggravated the heart attack.

Gonzales cites two cases involving claimants who also suffered heart attacks.  *Ortco Contractors, Inc. v. Charpentier*, 332 F.3d 283 (5th Cir. 2003); *Winfield v. Dep't of Navy*, No. 94-LHC-1859, 1996 WL 776446 (DOL O.A.L.J. Dec. 12, 1996).  But neither of those cases turned on a claimant's *prima facie* case for coverage under 33 U.S.C. § 920(a).  Although the ALJ in *Winfield* found that the weight of the evidence was insufficient to establish that the claimant's heart attack was caused by work-related stress, 1996 WL 776446 at *17, that finding came only after the claimant successfully made a *prima facie* case for the presumption of coverage, *id.* at *12. The ALJ found that the claimant "established that work could have caused the harm by proffering medical testimony suggesting that stress can cause heart attacks," as Middleton has done here. *Id.* The ALJ proceeded to analyze actual causation only because the employer then rebutted the presumption with substantial evidence.  *Id.* Similarly, in *Ortco Contractors*, we held that while the claimant successfully

6

made a *prima facie* case to invoke the presumption of coverage, the employer nonetheless submitted substantial evidence to rebut that presumption. 332 F.3d at 292 ("[A]lthough the ALJ initially erred in ruling that [the claimant] failed to make a *prima facie* case – indeed, she did . . . . [the employer] submitted substantial evidence sufficient to rebut [the claimant's] § 20(a) presumption." Here, Gonzales did not submit evidence to rebut the presumption that Middleton's injury was work-related. The ALJ therefore did not err in holding that the presumption of coverage applies in this case.

## B

Second, Gonzales argues that the BRB and the ALJ erred as a matter of law by including Gonzales' per diem payments to Middleton in the calculation of average weekly wage.

The LHWCA provides that the calculation of death benefits shall be based on the average weekly wage of the deceased. 33 U.S.C. § 909. The LHWCA defines "wages" as

> the money rate at which the service rendered by an employee is compensated by an employer under the contract of hiring in force at the time of the injury, including the reasonable value of any advantage which is received from the employer and included for purposes of any withholding of tax under subtitle C of title 26 (relating to employment taxes). The term wages does not include fringe benefits, including (but not limited to) employer payments for or contributions to a retirement, pension, health and welfare, life insurance, training, social security or other employee or dependent benefit plan for the employee's or dependent's benefit, or any other employee's dependent entitlement.

33 U.S.C. § 902(13).

We have held that non-taxable compensation can constitute wages under

the LHWCA. *B&D Contracting v. Pearley*, 548 F.3d 338, 342 (5th Cir. 2008). In *B&D Contracting v. Pearley*, we held that per diem payments can be properly classified as "wages" under the LHWCA where they "played the role of money wages." *Id.* at 343. We concluded that the payments in that case did play the role of wages, taking into account that the payments

> were calculated based on the number of hours worked; they were paid in the same paycheck as the employee's normal wages; the per diem was an unrestricted payment, unrelated to actual costs of meals, lodging, or travel; the same per diem was paid to all employees regardless of where they live; and the per diem constituted almost half of [the employee's] gross pay.

*Id.*

The payments in this case consisted of a daily allowance of $50 for employees who worked on sites outside of the company headquarters in Beaumont, Texas. The payments were disbursed for days actually worked, not all days spent away from Beaumont. The per diem was paid in cash at the same time paychecks were distributed. Employees were not obligated to substantiate travel costs or report their actual expenses. The payments were not included in employees' W-2 tax statements.

Gonzales argues that this case is distinguishable from *Pearley* because the per diem was paid in cash and not as part of a paycheck; it was paid only when workers were employed outside the Beaumont area; and the amount paid was closer to one-quarter than one-half of Middleton's wages. But as in *Pearley*, the payments here were calculated based on time worked, not time away from home, and employees could spend the payments in any manner without reporting expenses. In addition, Gonzales' owner testified that the per diem payments were intended, at least in part, to make the job more attractive to potential

employees. Therefore, we do not find error in the ALJ's conclusion that the per diem payments to Middleton were "more akin to wages" than compensation of expenses and were properly classified as wages under 33 U.S.C. § 902(13).

## CONCLUSION

For the above reasons, we find that the BRB correctly concluded that the ALJ's order was in accordance with the law and supported by substantial evidence based on the record as a whole. We therefore DENY Gonzales' petition for review.